ELLIS, Judge:
This case is before us for the purpose of fixing damages following a remand from the Supreme Court. See Tucker v. Lirette, 393 So.2d 293 (La.App. 1st Cir. 1980); Tucker v. Lirette, 400 So.2d 647 (La.1981).
The injuries suffered by plaintiff Walter Dale Tucker were the result of an accident on April 23, 1978, when his motorcycle struck an automobile operated by Mrs. Earl Lirette, Jr. and insured by State Farm Mutual Automobile Insurance Company. Defendants are Mrs. Lirette, her husband, and State Farm.
Mr. Tucker suffered numerous contusions and abrasions over his body, some minor lacerations, and a compound fracture dislocation of his right wrist. Dr. Pete H. Rhymes, an orthopedist who was the treating physician, testified that a laceration on the back of plaintiff’s head was sutured, and the others cleaned up. He stated that the fracture was not a bad one. Some severed tendons were repaired, and the break was set with a pin. Plaintiff remained in the hospital for six days. Dr. Rhymes stated that the injury was extremely painful for two or three days, and that plaintiff suffered some pain thereafter for two or three weeks.
*558 Plaintiff wore a long arm cast until May 22, 1978, when it was replaced with a short arm cast, which was, in turn, removed on June 5th. The pin was removed from plaintiff’s wrist on June 15th and he began physical therapy on June 29th. By August 9th, x-rays showed the fracture to be well healed and in good position, with some narrowing of the wrist joint near the fracture site. Plaintiff demonstrated a lack of grip strength in the right hand.
Dr. Rhymes was of the opinion that plaintiff had a 15% to 20% disability of the wrist as a result of the accident. Although plaintiff made no complaints of pain in the wrist after May, 1978, the doctor felt that the narrowing of the wrist joint foretold that plaintiff might develop wrist arthritis at some later date. In that case, he felt that plaintiff might require surgery for fusion or prosthesis. He would not recommend that plaintiff be hired as a bulldozer operator because his wrist might degenerate or be reinjured. Dr. Rhymes stated that his evaluation of plaintiff’s condition was based on the assumption that plaintiff would be working with heavy equipment for eight to ten hours per day.
Mr. Tucker testified that before the accident, he had been employed by the Greg Moise Company as a bulldozer operator at $4.25 per hour. He remained off the job from the date of the accident until June 3, 1978, when he returned to the Moise company as a foreman, training young men to operate the bulldozer. He was still so employed at the time of trial, at a salary of $6.75 per hour. He operates a bulldozer, putting finishing touches on the work done by less skilled operators, but stated that his arm hurts if he operates the bulldozer more than three or four hours. Before the accident, he would operate the machine from eight to twelve hours per day, five days a week.
Plaintiff testified that, as of the time of trial, he still had pain if he worked too hard and when the weather changed. This might happen every other week and last two or three hours. He stated that he now finds it hard to hold a fork or a pencil as he used to, and that he had been told that he could not get hospitalization insurance because of the injury to his wrist.
In summary, plaintiff suffered a wrist fracture of moderate severity, which was painful for about a month after the accident, but which has caused little discomfort since that time. As a result, his ability to operate heavy machinery has been impaired. However, because of his skill, plaintiff has been employed at a higher salary, in a supervisory position, since about six weeks after the accident. There is no indication in the record that his current employment is in jeopardy. Dr. Rhymes was of the opinion that plaintiff could expect deterioration of his wrist if he continued to work eight to ten hours per day operating a bulldozer. There is no medical opinion as to plaintiff’s future under the conditions of his present employment.
Considering all of the foregoing, we feel that an award of $20,000.00 will adequately compensate plaintiff for his pain, suffering and disability, past and future. Special damages of $2,384.50 for medical expenses, and $1,530.00 in lost wages were proven.
Plaintiff testified that he had just purchased the motorcycle involved in the accident for $600.00, and that it was totally destroyed therein. We will award this amount as well. We do not find that plaintiff has proven any future economic loss because of his condition. Any award made by us would be purely speculative. The record shows an increase rather than a loss in earning capacity.
Accordingly, there will be judgment herein in favor of plaintiff and against defendants for $24,514.50, with legal interest from date of judicial demand until paid, and all costs of these proceedings.
RENDERED.