11 STEWART, Judge.
Carolyn Panzico filed suit on behalf of her minor child, Jennifer Pettis, nee Powell, for damages arising from an automobile-pedestrian accident. While suit was pending, Pow *1155 ell attained the age of majority and was substituted as party plaintiff. Defendants Roy Knight, Danny Knight and State Farm Fire and Casualty Insurance Company were formally dismissed following settlement. The remaining defendants were Dianne Price (Aeree), Marcus Shane Aeree, Cecil Wayne Aeree and State Farm Mutual Automobile Insurance Company. The trial court found for the defendants on the issues of insurance coverage and negligent entrustment and therefore did not reach the issue of damages. Plaintiff appeals this ruling. We affirm.
FACTS
This case arose out of an automobile accident that occurred on January 7, 1989 when a car driven by Danny Knight struck Powell, who was standing in a parking lot in Monroe, Louisiana. The vehicle belonged to defendant-appellee Dianne Price, referred to throughout the record as Diane Aeree. She was the named insured on the State Farm policy that covered the vehicle.
Aeree had given her minor stepson, Shane, permission to use her car that evening for a date. When his date was canceled, Shane picked up Danny Knight and the two boys went for a ride. They eventually parked the car and stood visiting with friends. Shane gave Danny permission to borrow the car to drive to an A & P parking lot at 1801 North 18th Street in Monroe. Powell was standing in the parking lot in the path of the vehicle and Danny hit her.
Immediately following the accident, Powell went by ambulance to the emergency room at St. Francis Medical Center, where she was treated and released. Almost two months later, Powell sought medical attention from Dr. Ronald Woods, |2a family practitioner. His initial impression was that Powell suffered from cervical, thoracic or lumbar spine strain. Powell saw Dr. Woods sporadically from February 1989 until August 1991, complaining of back pain. Dr. Woods’ ultimate diagnosis was either degenerated disc disease occurring at an early age, ñbrositis, or fibromyalgia.
Powell also saw Dr. J.E. Smith, an orthopedic specialist, on April 17, 1989 and again on May 9, 1991. According to his deposition testimony, Dr. Smith opined that Powell had fibrositis or fibromyalgia. Neither Dr. Smith nor Dr. Woods could testify with certainty that the pain was a result of the accident.
Shane and Dianne Aeree both testified that Shane had very limited access to Dianne’s vehicle. The keys were unavailable to him. He had to seek special permission and state his purpose each time he wanted to borrow the car. If permission was granted, Shane was reminded not to drink and drive or to allow anyone else to drive the car. The Aerees were unaware that Shane previously let Danny drive the car.
Danny was sixteen years old at the time of the accident. Police investigation of the accident revealed that he did not have a driver’s license. Shane, however, was not aware that Danny was without a license. He had seen Danny driving in the past and assumed that, because he was old enough to obtain a license, he had one.
At trial, Powell asserted two theories of liability; that the omnibus clause of the Acree’s insurance policy extended to cover Danny’s driving of the vehicle and that Shane had negligently entrusted Danny with the car, thereby imputing Shane’s negligence to his father. In its written reasons for judgment, the trial court concluded that Danny was not covered under the omnibus clause of Dianne Acree’s insurance policy because it was not reasonably foreseeable to Aeree that her stepson |3would lend her car to a third driver. The trial court also found that plaintiffs theory of negligent entrustment lacked merit because the evidence was not sufficient to establish that Shane negligently entrusted Danny with Acree’s car. Furthermore, the court found that if there had been any negligence, it was strictly in Danny’s operation of the vehicle, not in Shane’s lending the car to him. For the following reasons, we agree with the trial court and affirm its ruling.
COVERAGE UNDER THE OMNIBUS CLAUSE
The omnibus clause of Dianne Acree’s insurance policy provides that
When we refer to your car ... insured means:
*1156 1. you;
2. your spouse;
8. the relatives of the first person named in the declaration;
4. any other person while using such a car if its use is within the scope of consent of you or your spouse; and
5. any other person or organization liable for the use of such a ear by one of the above insureds, (emphasis omitted)
Powell contends that the trial court applied the wrong case law in determining whether the omnibus clause of Dianne Acree’s insurance policy extended to cover Danny Knight’s actions. The trial court held that Perkins v. McDow, 615 So.2d 312 (La.1993) provided the controlling jurisprudence regarding second permittees. It is Powell’s position that the Supreme Court’s decision in Norton v. Lewis, 623 So.2d 874 (La.1993) overruled Perkins v. McDow and its predecessors.
Perkins v. McDow reiterated the jurisprudential rule that to have coverage under an omnibus clause, the driver of a vehicle must have the permission of the named insured. If the insured has given permission to another driver, the insurance coverage will extend to a third driver only when the insured could reasonably foresee that the first permittee would allow someone else to drive the automobile.
| ¿According to Powell, Norton v. Lewis holds that once initial permission has been granted, coverage extends to anyone who drives the car except a thief. Powell contends that this holding effectively overrules Perkins v. McDow and dictates that the omnibus clause must extend to cover whoever drives the named insured’s car after she grants initial permission to another driver. The trial court distinguished Norton v. Lewis on its facts. For the following reasons, we find that the Supreme Court did not overrule Perkins v. McDow when it rendered its decision in Norton v. Lewis.
Before 1961, the jurisprudence dictated that permission given to a first permittee was to be liberally construed to such a degree as to extend coverage under the omnibus clause even when there were deviations from or contrary to the initial instruction of the insured. Parks v. Hall, 189 La. 849, 181 So. 191 (La.1938); Waits v. Indemnity Ins. Co. of North America, 215 La. 349, 40 So.2d 746 (La.1949); Stanley v. Cryer Drilling Co., 213 La. 980, 36 So.2d 9 (La.1948); Dominguez v. American Casualty Co., 217 La. 487, 46 So.2d 744 (La.1950).
In 1961, in Rogillio v. Cazedessus, 241 La. 186, 127 So.2d 734 (La.1961), our Supreme Court set forth a new rule regarding second permittees. The court held that when the language of the omnibus clause expressly states that only the named insured or his spouse may grant permission to use the vehicle, this clear and unambiguous phrasing shows that the contract between the parties does not provide for coverage if the first permittee grants permission to another driver. Hence, the driver of the vehicle must have the permission of the insured to be covered under the insured’s policy. Permission may be either express or implied. Rogillio v. Cazedessus, supra. Justice Sanders’ concurrence in Rogillio opined that the insured |5may imply permission to a second permittee by the very nature of permission expressly granted to a permittee in the first instance.
By 1970, the Supreme Court had clearly established a reasonable foreseeability test, supplying the basis for finding implied permission. American Home Assurance Co. v. Czarniecki, 255 La. 251, 230 So.2d 253 (La. 1970). See also 38 L.L.R. 446, 447; 48 L.L.R. 296. The Court noted that
Where an effort is made to imply permission in [second permittee] cases, the realm of speculation is inevitably involved to some extent. Implying permission, as in other contractual implications, is, essentially, nothing less than a judicial extension of the terms of an obligation by reading into the language a meaning which is not clearly expressed. It is, in effect, a rewriting of the contract between the parties and, a fortiori, a rewriting of the law which they have made for themselves. It is an authority to be most carefully exercised calling for a proper restraint by courts, (citations omitted)
*1157 With this in mind, the Czamiecki court found that when the named insured allowed his stepson to borrow his ear for a double date and, although the insured did not place express restrictions on the stepson’s use thereof, when the son subsequently lent the car to the friend with whom he was double dating, that use exceeded the permission, both express and implied, initially granted.
While the Czamiecki decision yielded a strict result, later decisions proved somewhat more liberal. For example, the Supreme Court has held that where people customarily exchange vehicles or allow their first per-mittee to let another drive the car in emergency or necessitous situations, permission to a third driver is implied. Hughes v. Southeastern Fidelity Insurance Co., 340 So.2d 293 (La.1976); Morgan v. Matlock, Inc., 342 So.2d 167 (La.1977). However, until recently, the court has very rarely found coverage in instances where a named insured expressly prohibits the lending of a car to a second permittee. Malmay v. Sizemore, 493 So.2d 620 (La.1986).
16The inquiry in second permittee cases is whether it is reasonably foreseeable that the first permittee would allow others to drive the car. Malmay v. Sizemore, supra. Where there has been an express prohibition against letting others drive the car, courts generally have not found implied permission except in emergency situations where the named insured has not objected to the use, and where the named insured benefited from the use. King v. Louisiana Farm Bureau Ins. Co., 549 So.2d 367 (La.App. 2d Cir.1989); Solice v. State Farm Mut. Auto. Ins. Co., 488 So.2d 1159 (La.App. 2d Cir.1986).
With the decision in Perkins v. McDow, there was a shift to yet a more liberal view of what would be considered reasonably foreseeable. The court held that even when there has been express prohibition against third drivers, it may be reasonably foreseeable that the initial permittee would allow another to use the car. Perkins v. McDow, supra. The context in which the prohibition is made is a necessary ingredient in determining reasonable foreseeability. Perkins v. McDow, supra.
The Perkins court found it reasonably foreseeable that an adult child living in the home, having general and continuing access to a car, would lend it to another driver, although he had been admonished not to let others drive the car. Perkins v. McDow, supra. While, as the court admits, this decision broadens previous decisions dealing with second permittees, it continues to follow the jurisprudential lead of contemplating what is reasonably foreseeable instead of making a blanket determination that if use was granted to one, it is assumed granted to all.
In a concurring opinion, Justice Watson declared that omnibus clauses are contrary to statutory law mandating that all vehicles be insured; thus, permissive use clauses should be abolished.
l7In Norton v. Lewis, supra, the Supreme Court considered whether an automobile dealer’s liability insurance policy afforded coverage for the dealer’s off-duty employee, who had been granted permission to use the vehicle at work, and who caused a head-on collision while running personal errands in the dealer’s car. The court chose to use the word “permission” in the broadest sense possible, citing cases involving both initial and second permittee cases. It held that
Once the permission, whether express or implied, to use a motor vehicle is established it is given a wide and liberal meaning in determining coverage. So long as the initial use of the vehicle is with the consent, express or implied, of the insured, any subsequent changes in the character or scope of the use do not require additional specific consent of the insured; coverage will be precluded only where the deviation from the use consented to amounts to theft or other conduct displaying utter disregard for the return or safekeeping of the vehicle. Citations omitted.
Powell contends that this language effectively overrules Perkins v. McDow, supra, and controls in the instant case. However, we are not persuaded that the Supreme Court overruled Perkins v. McDow by its decision in Norton v. Lewis. Had the Court’s intention been to overrule over twenty years of jurisprudence, it would have said so. While Justice Watson’s concurring com *1158 ments in Perkins v. McDow have merit, they were not the collective view of the court. We are without authority to overrule the Supreme Court. Furthermore, Norton v. Lewis did not address the issue of second permit-tees, which is the crux of and is, therefore, factually different from the instant case.
We agree with the trial court that Perkins v. McDow sets forth the applicable law, whereby the issue of coverage is subject to a reasonable foreseeability test. The trial court determined that Mrs. Aeree could not have reasonably foreseen that Shane would lend the car to another person. This determination was based on factual findings that Shane had limited access to the car. The Aerees’ restricted Shane’s use to specific occasions, always subject to the ^restriction that he not drink and drive or allow anyone else to use the car. The court found, as a fact, that Mrs. Aeree could not have reasonably foreseen that Shane’s date would be cancelled, that he would go out with Danny, and that he would allow Danny to drive the car. The finding of the trial court is not clearly wrong.
NEGLIGENT ENTRUSTMENT
Powell contends that the trial court erred in not finding negligent entrustment of Acree’s vehicle. It is Powell’s position that Shane was negligent in lending a vehicle to Danny, who was not a licensed driver.
LSA-C.C. Art. 2317 establishes that persons are responsible for the damage caused by the things within their custody. To be responsible for negligently entrusting that which is in our custody to one who is incompetent to use it requires the knowledge that the person is incompetent. Frain v. State Farm Ins. Co., 421 So.2d 1169 (La.App. 2d Cir.1982); Pereira Enterprises, Inc. v. Soileau, 551 So.2d 39 (La.App. 1 Cir.1989).
It is well settled that violation of a criminal safety statute does not, in itself, create civil liability. To constitute actionable negligence, the violation must be encompassed within the scope of the risks that the statute was designed to protect against, and the violation must be a cause-in-fact of the accident. Armour v. Armour, 541 So.2d 371 (La.App. 2 Cir.1989), writ denied, 546 So.2d 1217 (La.1989); Wright v. O’Neal, 427 So.2d 852 (La.1983); Boyer v. Johnson, 360 So.2d 1164 (La.1978).
Statutory law provides that unlicensed drivers are prohibited from driving and that drivers are prohibited from allowing unlicensed drivers to drive. LSA-R.S. 32:52. The intent of this statute is to protect the public and the unlicensed driver by |9preventing inexperienced drivers from operating vehicles on public roads. Loveday v. Travelers Ins. Co., 585 So.2d 597 (La.App. 3d Cir.1991).
Under a duty-risk analysis, there is a risk that unexperienced minors will operate vehicles when they are simply too young to handle such a responsibility. The statutory duty imposed, therefore, is to prevent inexperienced minors from operating motor vehicles on public roads. However, if an unlicensed minor, despite his age, is a competent and experienced driver, the risk of allowing him to drive is outside the scope of the risks that LSA-R.S. 32:52 was intended to protect against. Armour v. Armour, supra; Loveday v. Travelers Ins. Co., supra.
The trial court found that the evidence was insufficient to find that Shane knew that Danny was not a licensed driver or that Danny was an inexperienced or bad driver. In fact, Shane had witnessed Danny driving in the past, which indicates that Danny was experienced behind the wheel. The trial court’s factual findings on this issue are not clearly wrong.
CONCLUSION
For the foregoing reasons, the trial court did not err in finding that Dianne Acree’s insurance policy did not cover Danny Knight or in finding that the evidence was insufficient to prove a claim of negligent entrustment; hence, we need not address the issue of damages. We affirm the ruling of the trial court.
BROWN, J., dissents with written reasons.